```
            THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

                                CENTRAL DIVISION
```

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

UNITED STATES OF AMERICA,        )    Case No. 2:06CR00761 DS

        Plaintiff,       )

   vs.                           )

                                                MEMORANDUM DECISION
MICHAEL ALBERT,                  )    AND ORDER ADDRESSING
                                                MOTION TO SUPPRESS
        Defendant.       )    EVIDENCE

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

## I.  INTRODUCTION

Defendant Michael Albert has moved to suppress evidence seized from the search of his car on August 22, 2006 in connection with a traffic stop, along with incriminating statements elicited from police officers.[1]  An evidentiary hearing was held, followed by post trial briefing which was completed on April 17, 2007.

The material facts are not in dispute.  On the afternoon of August 22, 2006, Officer Amy DeNeff of the Sandy City, Utah Police Department stopped the car in which Mr. Albert was a passenger for a traffic violation.  The driver was a woman identified as Rachel Sermon.  Mr. Albert, who was in the passenger seat, was not wearing a seatbelt.  Officer DeNeff requested identification from both

---

[1] Although Mr. Albert's original motion raised an issue regarding whether his waiver of rights, after being given a *Miranda* warning, was knowing and voluntary, he now concedes that his rights under the Fifth Amendment were not violated.  *See* Mem. Supp. n. 21.

driver and passenger. Ms. Sermon provided a temporary registration for the vehicle, but indicated that she did not have insurance because she and Mr. Albert had recently purchased it.

After running Ms. Sermon's information on her patrol car computer, Officer DeNeff learned that Ms. Sermon's driver's license was suspended and that she had an outstanding no-bail warrant for her arrest. Officer DeNeff ran Mr. Albert's information and learned that Mr. Albert's driver's license also was suspended.

Upon the arrival of a back-up officer, Officer DeNeff informed Ms. Sermon of the warrant and placed her under arrest. Mr. Albert was not placed into custody, but he was asked to exit the vehicle as Officer DeNeff had decided to conduct a search of the vehicle incident to Ms. Sermon's arrest. Because the car was not insured and because Mr. Albert could not drive the vehicle due to his suspended license, Officer DeNeff also decided to inventory the vehicle prior to having it impounded.

Behind the driver's seat, in the passenger area of the vehicle, Officer DeNeff found a black gym bag containing what appeared to be, and later proved to be, methamphetamine, scales, a marijuana pipe, and some syringes. Not knowing to whom those items belonged, Officer DeNeff had the back-up officer take Mr. Albert

into custody including having him placed into handcuffs. Continuing her search, Officer DeNeff found a shotgun and a sock with seven shotgun shells in the trunk of the vehicle.

When Officer DeNeff ran the criminal histories of both Ms. Sermon and Mr. Albert she learned that Mr. Albert was a person restricted from possessing a firearm due to a conviction for a violent felony.

Officer DeNeff informed both Ms. Sermon and Mr. Albert of their Miranda rights and Mr. Albert agreed to speak with her. Based on her interview with the suspects, Officer DeNeff arrested Mr. Albert for possession of a firearm by a restricted person.

## II.   DISCUSSION

**A.   Did the Investigatory Detention of Mr. Albert escalate to an illegal arrest?**

Mr. Albert's position is that Officers exceeded the scope of a *Terry* detention when they searched his person and put him in handcuffs and that their actions constituted an illegal arrest for which they lacked probable cause.

"A routine traffic stop constitutes an investigative detention and is examined under the principles announced in *Terry v. Ohio*,

392 U.S. 1, 19-20 ... (1968)". *United States v. Williams*, 403 F. 3d 1203, 1206 (10th Cir. 2005). The court makes a two step inquiry when addressing the constitutionality of an investigative stop. The first inquiry is "whether the stop was justified at its inception." *Id*. A traffic stop for an observed traffic violation is valid under the Fourth Amendment. *Id*. The second inquiry is "whether the officer's conduct during the detention was reasonably related in scope to the circumstances which justified the initial stop." *Id*. A motorist may be detained for questioning unrelated to the initial traffic stop if the officer has "an objectively reasonable and articulable suspicion that illegal activity has occurred". *Id*. "If a police-citizen encounter exceeds the limits of a *Terry* stop, the detention becomes an arrest that must be supported by probable cause." *United States v. Neff*, 300 F.3d 1217, 1220 (10th Cir. 2002).

Mr. Albert does not challenge the validity of the initial stop. He asserts, however, that "the fact that he was handcuffed, the fact that he was searched incident to arrest, and Officer DeNeff's stated view of the detention establish that when officers took Mr. Albert 'into custody,' they arrested him." Reply, p.2.

"The allowable scope of an investigative detention cannot be determined by reference to a bright-line rule; '"common sense and

4

ordinary human experience must govern over rigid criteria.'" *United States v. Neff*, 300 F. 3d at 1220 (quoting *United States v. Sharpe*, 470 U.S. 675 (1985)).  Officers are not required to take unnecessary risks and are permitted to take reasonable steps to insure their safety and to preserve the status quo during a *Terry* stop including the use of handcuffs or placing the subject on the ground.  *Id.*, 300 F. 3d at 1220.  *See also United States v. Hodges*, No. 06-53038, 2007 WL 293533 (10th Cir. February 2, 2007)(use of handcuffs is not unreasonable during a *Terry* stop as long as there is some articulable ground for fearing danger from the suspects, which is determined by looking to the objective facts); *United States v. Valenzuela*, No. 06-2206, 2007 WL 1068110, at *3 (10th Cir. April 11, 2007)("use of handcuffs during the course of an investigative detention is a reasonable means of neutralizing potential danger").

Based on the evidence presented the Court concludes that the Officers' conduct did not exceed the scope of a legal *Terry* stop. The initial traffic stop is not challenged.  As part of the traffic stop Officer DeNeff properly requested that Ms. Sermon produce her driver's license, proof of registration, and proof of insurance. *United States v. Holt*, 264 F.3d 1215, 1220-1222 (10th Cir. 2001). Because Ms. Sermon stated that she did not have insurance because she and Mr. Albert had just purchased the vehicle, and because Mr.

5

Albert was not wearing a seatbelt, Officer DeNeff also requested identification from Mr. Albert. From running their identification through her patrol car computer Officer DeNeff learned that Ms. Sermon's driver's license was suspended, that there was an outstanding warrant for her arrest, and that Mr. Albert's driver's license was also suspended.

Ms. Sermon was properly placed under arrest at that juncture, and a search of the vehicle incident to her arrest was properly conducted. Because neither Ms. Sermon or Mr. Albert was legally licensed to operate the vehicle, the search of the vehicle was also proper as an inventory prior to impoundment. *United States v. Tueller*, 349 F.3d 1239, 1243 (10th Cir. 2003).

Once methamphetamine was discovered in the passenger compartment, the continued detention of Mr. Albert was reasonable and within the scope of a *Terry* detention. *United States v. Williams*, 403 F.3d at 1206. The facts presented also support the reasonableness of placing Mr. Albert in handcuffs while Officer DeNeff continued her search of the vehicle. Officer DeNeff had uncovered evidence of criminal wrongdoing by either Ms. Sermon, Mr. Albert, or both. That evidence was in the passenger compartment of the vehicle where both driver and passenger had easy access. Until she determined who possessed the drugs she was entitled to preserve

the status quo and to take reasonable steps to preserve her personal safety and that of her backup officer.  The potential dangers of vehicle stops is well recognized by the courts.  *United States v. Holt*, 264 F.3d 1215, 1223 (10th Cir. 2001).  An officer has "an objective, reasonable basis to fear for his or her life every time a motorist is stopped."  *Id*.  The expectation of the motorist or passenger of receiving a fine or a jail term "becomes even more real when the motorist or a passenger knows there are outstanding arrest warrants or current criminal activity that may be discovered during the course of the stop.  Resort to a loaded weapon is an increasingly plausible option for many such motorists to escape those consequences ...".  *Id*.   Given that the driver of the vehicle was wanted on an outstanding warrant and had been placed under arrest, and that evidence of criminal activity was discovered where both individuals had access to the passenger compartment and where it had been represented that they had purchased the vehicle together, it was reasonable under the circumstances for Officer DeNeff to not only further detain Mr. Albert, but also for her to place him in handcuffs.

   Mr. Albert's reliance on *United States v. Melendez-Garcia*, 28 F.3d 1046, 1052 (10th Cir. 1994), for the proposition that suspicion of drug trafficking is not sufficient to justify the use of guns and handcuffs during a *Terry* stop is distinguishable from the

7

present case.  Here, no guns were brandished and the presence of drugs in the vehicle was confirmed, not just suspected, notwithstanding that possession was yet to be determined.

Mr. Albert also argues that because Officer DeNeff characterized the pat down of his person as a search incident to arrest and because she told her backup officer to place him in custody, he was in fact arrested and not just detained.  The Court disagrees.  "The police conduct should be judged in terms of what was done rather than what the officer involved may have called it at the time."  *Kilgore v. City of Stroud*, 158 Fed. Appx. 944, 949 (10th Cir. 2005).  *See also United States v. Neff*, 300 F.3d at 1222 ("[i]n measuring the actions of a police officer under the Fourth Amendment, ... we look at the objective facts, not the officer's state of mind").   The determination of what point in time Mr. Albert was arrested is not dependent on either his or Officer DeNeff's belief as to when an arrest occurred.

Finally, Mr. Albert's suggestion that he was "arrested" simply due to his presence in the same vehicle where drug contraband was discovered is rejected.  Here, Mr. Albert and Ms. Sermon were the only two passengers in the vehicle.  Both had access to where the drugs were found.  As discussed, he was detained under the *Terry*

doctrine for further investigation regarding the drugs, not arrested.

In sum, under the totality of circumstances Officer DeNeff Had a reasonable, articulable ground for fearing danger from Mr. Albert during his continued detention and the use of handcuffs was appropriate. Because the initial stop and the detention was justified under the *Terry* doctrine, it was not an arrest requiring probable cause as Mr. Albert asserts.

Once the shotgun was discovered and Officer DeNeff confirmed that Mr. Albert was a restricted person prohibited from possessing a firearm, and based on post-Miranda interviews with both suspects, probable cause existed to place him under arrest for possession of a firearm by a restricted person.

### III.   CONCLUSION

For the reasons set forth, Mr. Albert's Motion to Suppress is denied.

IT IS SO ORDERED.

DATED this 3rd day of May, 2007.

BY THE COURT:

*David Sam*
DAVID SAM
SENIOR JUDGE
UNITED STATES DISTRICT COURT